In the Matter of the Estate of Letha
LEMLEY, Incompetent

CA 82-253                                              653 S.W.2d 141

Court of Appeals of Arkansas
Opinion delivered July 6, 1983

*Mark Cambiano,* for appellant.

*Bullock, Hardin & McCormick,* for appellee.

TOM GLAZE, Judge. This case involves a guardianship termination proceeding in which the appellant requested the trial court to adjudicate and restore her competency. The court refused to grant her request, and the appellant argues here that the court's decision is clearly against the preponderance of the evidence. We agree.

After her last parent died in 1941, appellant was adjudged an incompetent and a sister, Mrs. Brown, was appointed the guardian of appellant's person and estate. In

1969, Mrs. Brown died and another sister, Ms. Rorex, was named appellant's successor guardian. Ms. Rorex served until 1981 when the court appointed a bank the guardian of appellant's estate and a friend, Mr. Earl Wardell, the guardian of her person. Shortly after these two appointments, appellant filed this termination proceeding. Appellant's cousin opposed appellant's action and a hearing was held in December, 1981. The cousin did not appear at the hearing, but he was represented by counsel. Appellant, Mr. Wardell, and his wife were the only witnesses who testified; however, the statement of a psychiatrist was admitted into evidence.

The record shows the appellant has lived alone since Mrs. Brown's death in 1969, caring for herself and her home. In this connection, she shops for and prepares her own food. Appellant also socializes most every day at the Adult Center in Morrilton, Arkansas. Appellant testified that she owns farmland in Atkins, Arkansas, which is cared for by Jack Randolph. However, when asked the amount of money she had, she said that she did not know because her last guardian, Ms. Rorex, would never say when appellant asked.

The Wardells testified they were next door neighbors to appellant when they first met her nearly seven years ago. Even though the Wardells have moved across town, they still continue their friendship with appellant and assist her in different ways. Both Wardells testified that they provide transportation for appellant, when necessary. Mr. Wardell said that he has also had to assist her in getting the guardian bank to pay her bills.[1] The Wardells testified further that appellant takes care of her personal affairs but indicated she needs some assistance in managing her money because she has had no experience in such matters.

Dr. Vale Harrison, a psychiatrist, submitted his written evaluation of appellant which related she was probably

---

[1] In its findings, the court mentioned that the appellant has $72,000 in an account at the bank, but the bank gives her only $10 per month, ostensibly for "incidental expenses."

never quite average in intelligence. He said that she quit public schools in the sixth grade but completed two more years at a St. Louis boarding school. Harrison's evaluation indicated appellant was without psychosis and that she is in good contact with reality. He said that appellant did not have complete knowledge of the extent of her holdings but that this was because she was never told what she owned and was "too passive to make it her business to find out." Dr. Harrison's recommendation to the court was that appellant be considered competent to care for her person but a guardian should be appointed to manage her financial affairs.

No evidence was offered to contradict that offered by the appellant. Nevertheless, the trial court continued appellant's incompetency, maintaining the bank and Mr. Wardell as guardians.

The rule is settled that once a person's incompetency is established, that incompetency is presumed to continue until a change has been established by proof. *Lester* v. *Pilkington,* 225 Ark. 349, 282 S.W.2d 590 (1955). In reviewing the probate court's finding on whether a change has been established, we affirm unless the court's decision is clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *See Andres* v. *Andres,* 1 Ark. App. 75, 613 S.W.2d 404 (1981); Ark. Stat. Ann. § 62-2016 (g) (Repl. 1971), and Ark. Rules of Civ. Pro. 52 (a). An incompetent for guardianship purposes (except for those under age) is defined as one who is incapable by reason of insanity, mental illness, imbecility, idiocy, senility, habitual drunkenness, excessive use of drugs or other mental incapacity, of managing his property or caring for himself. *See* Ark. Stat. Ann. § 57-601 (c) (2) (Supp. 1981); and *Keenan* v. *Peevy,* 267 Ark. 218, 590 S.W.2d 259 (1979). In *Keenan,* the Supreme Court held the probate court's jurisdiction in guardianship matters is limited to persons of unsound mind. Explaining further, it noted that inability which permits the appointment of a guardian is limited to some form of mental incapacity. The Court quoted the Commentary to § 57-601:

> This Code does not authorize the appointment of a guardian for a person who may be incapacitated physically as long as a person has mental faculties sufficient to understand the nature of his property and to protect it by agent even though he may be unable to do so in person.

Id. at 235, 590 S.W.2d at 269.

In the instant case, appellant's competency to care for herself was clearly established by the proof. On the other hand, this same evidence indicates the appellant is unable to manage her estate, although her inability to manage it appears to be caused by her inexperience in such matters and her ignorance of the extent of her holdings. In sum, the evidence shows appellant's trusting nature and lack of assertiveness, but we find nothing in the record to indicate that she suffers from the requisite mental incapacity or unsoundness of mind required under our present Guardianship Code to necessitate the appointment of a guardian for her estate or person. In fact, appellant's actions manifest clearly the opposite. She has cared for herself for over twelve years, and she exhibits a knowledgeable understanding of at least that property she does possess and about which she has been told.

Although we reverse the trial court for the reasons stated, we remand this case for further proceedings. The appellant has had little experience in handling money. In continuing appellant's guardianship, the trial judge voiced a genuine concern that someone might take undue advantage of her inexperience in financial matters. At the conclusion of the hearing, the judge urged the parties to consider a conservatorship. Of course, a conservatorship, assuming appellant's incompetency, would have been inappropriate, but because of our holding here, such a proceeding may now prove worthy of consideration. Another alternative, providing even greater flexibility, is Arkansas' new Limited Guardianship Law set out in Act 345 of 1983.[2] Because it was previously unnecessary for the trial

---

[1] July 4, 1983, is the effective date of Act 345.

court to consider the application of other alternatives to appellant's situation, we reverse and remand with directions to do so now.

Reversed and remanded.